IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRIS LOGAN,

               Plaintiff,

      v.

THE CITY OF CHICAGO, a unit
of local government, and
JEFFREY REDDING, ROBERT MAY,
ANTHONY BATES, DAVID SCHMIDT,
and JORGE RODRIGUEZ, in their
individual and official
capacities

               Defendants.

Case No.  17 C 8312

Judge Harry D. Leinenweber

MEMORANDUM OPINION AND ORDER

Defendants City of Chicago, Jeffrey Redding, Robert May, Anthony Bates, David Schmidt, and Jorge Rodriguez (collectively "Defendants") move to dismiss partially (Dkt. No. 29) Plaintiff Chris Logan's First Amended Complaint (Dkt. No. 22) for failure to state a claim. FED. R. CIV. P. 12(b)(6). For the reasons stated herein, Count IV and the First Amendment claim in Count VI are dismissed without prejudice, and Counts VIII and IX are dismissed with prejudice. The individual (non-City) Defendants are also stricken from Count III. The case therefore proceeds on Counts I,

II, III (solely against the City), VI (solely on Due Process and Equal Protection grounds), VII, and X.

## I. <u>BACKGROUND</u>

This case arises from events that occurred during Logan's employment with the City of Chicago's Department of Aviation ("DOA"). (Compl. ¶ 5.)  Logan was serving as an aviation security officer when, in 2015, he was interviewed for a promotion to sergeant. (Compl. ¶ 12.)  Sometime in June or July of 2016, Defendants Redding and Bates—two senior DOA officials—allegedly contacted DOA Human Resources ("HR") and requested that it remove Logan from a list of officers being considered for promotion ("the Promotion List"). (Compl. ¶ 13.)  Then, around August of 2016, Defendants Rodriguez and Schmidt—another two DOA officials—allegedly made false complaints against Logan, resulting in his 14-day suspension. (Compl. ¶ 14.)  Logan believes that Defendants levied said complaints against him in retaliation for an earlier incident, in which Logan confronted Defendant Redding for sexually harassing a female co-worker. (Compl. ¶¶ 45-47.)

Several months later, around October of 2016, Logan learned of Defendants' having requested HR to remove him from the Promotion List. (Compl. ¶ 15.)  With that information, Logan filed a complaint with the City's Office of the Inspector General ("OIG"). (Compl. ¶ 15.)  In the proceeding months, Logan—an African-American male—also filed a complaint for race discrimination with

HR and requested that an OIG officer attend any subsequent meeting with HR to discuss the complaint. (Compl. ¶ 16.) Then, around February 28, 2017, Defendants Bates and Redding allegedly contacted HR to request again that Logan be removed from the Promotion List, emphasizing that Logan had recently been suspended. (Compl. ¶ 17.) Notwithstanding those requests, HR notified Logan that he was being promoted to sergeant, a promotion for which Logan subsequently completed paperwork, around the first week of March 2017. (Compl. ¶ 18.)

But then, to Logan's dismay, Defendant May—Director of Administration for HR—informed Logan he would not be promoted after all. (Compl. ¶ 19.) Instead, HR promoted two other employees, allegedly "less-qualified Caucasian officers," one of whom was a female. (Compl. ¶ 20.) In response, Logan filed a complaint with the Equal Employment Opportunity Commission and, as a result, received his right to file suit. (Compl. ¶ 21.)

Logan now brings this suit, claiming Defendants discriminated against him on the basis of his race and gender (Counts I and II). He further contends Defendants retaliated against him in violation of 42 U.S.C. § 2000e and his First Amendment and Equal Protection rights under 42 U.S.C. § 1983 (Counts III and IV). Logan also brings a *Monell* claim (Count VI), an Illinois Whistleblower Act claim (Count VII), and an Intentional Interference with Economic Advantage claim (Count VIII). Finally, Logan claims breach of

contract (Count IX) and seeks indemnification from the City (Count X). The Court notes that the Complaint fails to mention a Count V, so none will be addressed throughout this opinion.

## II. <u>ANALYSIS</u>

A 12(b)(6) motion to dismiss challenges the sufficiency of the complaint. *Christensen v. Cty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). To overcome a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). When considering a 12(b)(6) motion to dismiss, the Court must "accept[] as true all well-pleaded facts alleged, and draw[] all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Defendants have moved to dismiss: (1) the Title VII retaliation claim, as applied only against the individual (non-City) Defendants, in Count III; (2) the § 1983 retaliation claim in Count IV; (3) the *Monell* claim in Count VI; (4) the Illinois Whistleblower Act claim in Count VII; (5) the Intentional Interference with Economic Advantage claim in Count VIII; (6) the

breach of contract claim in Count IX; and (7) the claims for punitive damages against the City and attorney's fees in Counts VIII and IX.

## A.  Title VII Retaliation Claim

Defendants move to dismiss Count III—Logan's Title VII retaliation claim—against the individual Defendants, arguing that no individual liability exists under Title VII. Defendants are correct. *See Williams v. Banning*, 72 F.3d 552, 553-54 (7th Cir. 1995) (citing *EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1279-82 (7th Cir. 1995) (finding that "employer" under Title VII does not provide for individual liability)). Logan does not object and seeks to withdraw Count III, only as applied to the individual (non-City) Defendants. Because Defendants raise no argument against Count III as applied to the City, Logan may proceed on Count III in that limited fashion.

## B.  Count IV: § 1983 Retaliation Claims

Defendants move to dismiss Count IV—Logan's § 1983 Equal Protection and First Amendment retaliation claims—arguing that (1) § 1983 does not provide a remedy for employment discrimination rights created under Title VII; and (2) the First Amendment does not apply.

### 1.  Section 1983 and Title VII

Defendants first contend § 1983 provides a remedy for the deprivation of constitutional, not statutory, rights. Because

employment discrimination statutes, such as Title VII, created the right against retaliation for a charge of discrimination, Defendants argue any such retaliation claim may be brought only under Title VII or another applicable statute.

In *Schroeder v. Hamilton School District*, 282 F.3d 946, 948 (7th Cir. 2002), the Seventh Circuit considered a similar argument, regarding a right against discrimination in employment created by Title VII.  The plaintiff, a school teacher, brought a § 1983 lawsuit against his school district, its administrators, and its staff.  *Id*.  Like here, the plaintiff alleged constitutional violations based upon the defendants' failure to respond to his complaints of harassment and upon additional discrimination he alleges he suffered at the defendants' hands.  *Id.* at 949.  The court ultimately found that § 1983 does not apply where such statutorily-created rights against discrimination in employment serve the basis for an alleged Equal Protection violation.  *Id.* at 951.  In other words, "§ 1983 does not provide a remedy for rights created under Title VII."  *Id.* (citing *Trautvetter v. Quick*, 916 F.2d 1140, 1149 n. 4 (7th Cir. 1990); *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989)).

That decision is controlling.  The right that Logan claims in Count IV—namely, a right against retaliation for reporting harassment or discrimination—is one created and addressed by Title VII. Logan objects to Defendants' characterization of § 1983 as

providing a remedy solely for constitutional rights, but this is beside the point for present purposes. *Schroeder* establishes that § 1983 does not provide a remedy for Title VII rights and that is sufficient. *See id.*

### 2. The First Amendment

Undisputedly, § 1983 does provide a remedy for retaliation against *constitutionally*-protected conduct. *See Hutchins v. Clarke*, 661 F.3d 947, 955 (7th Cir. 2011) (recognizing that "the government cannot retaliate against its employees for engaging in constitutionally protected speech" and that such First Amendment claims may be brought via § 1983); *see also Gomex v. Garda CL Great Lakes, Inc.*, No. 13 C 1002, 2013 WL 6858793, at *4 (N.D. Ill. Dec. 30, 2013) (finding *Schroeder* "inapplicable because [p]laintiffs rely on their Fifth Amendment privilege against self-incrimination and the corresponding right to be free from retaliation when that right is exercised, not any employment-related right created by Title VII"). That brings us to Defendants' second argument.

Defendants contend that Logan fails to plead a viable First Amendment retaliation claim. To establish such a claim, Logan must prove that his speech was constitutionally protected. *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016) (citing *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013), *cert. denied,* 137 S. Ct. 491 (2016)). Further, to establish that his speech was constitutionally protected, Logan must show that he

spoke as a citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

According to Defendants, Logan's speech is not constitutionally protected because he spoke neither as a citizen nor on a matter of public concern. "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Id.* At the same time, "a public employee does not relinquish all First Amendment rights otherwise enjoyed by citizens just by reason of his or her employment." *City of San Diego v. Roe*, 543 U.S. 77, 80 (2004). The Supreme Court in *Garcetti* accordingly demarcated that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421. To determine what a plaintiff's official duties consist of, the Court looks to "what duties the employee is expected to perform, and is not limited to the formal job description." *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008). As the Seventh Circuit explained:

> speech does not 'owe[ ] its existence to a public
> employee's professional responsibilities' within the
> meaning of *Garcetti* simply because public employment
> provides a factual predicate for the expressive
> activity; rather, *Garcetti* governs speech that is made
> 'pursuant to official duties' in the sense that it is
> 'government employees' work product' that has been
> 'commissioned or created' by the employer.

*Chrzanowski v. Bianchi*, 725 F.3d 734, 738 (7th Cir. 2013) (quoting *Garcetti*, 547 U.S. at 422).

Defendants contend that Logan, as an aviation security officer, has a duty to report misconduct. So, Logan's internal complaints—one to HR concerning race discrimination and one to OIG concerning both retaliation and discrimination—were made pursuant to his official duties and thus were not protected by the First Amendment. Defendants' first premise is correct: Police officers have a duty to report official misconduct. *Forgue v. City of Chicago*, 873 F.3d 962, 967 (7th Cir. 2017) (citation omitted). The complaint to HR falls within that category. *See Roake v. Forest Pres. Dist. of Cook Cty.*, 849 F.3d 342, 346 (7th Cir. 2017) (holding that a police officer spoke within his official capacity when he shared complaints "only with his employer, and the complaints focused exclusively on official misconduct by his fellow officers"). Logan's report to HR is thus unprotected speech. With respect to his report to OIG, however, the Court reaches a different conclusion.

An employee is *not* speaking pursuant to his official duties when he "reports misconduct outside established channels" or reports something for which he did not have any formal responsibilities. *Spalding v. City of Chicago*, 186 F. Supp. 3d 884, 904 (N.D. Ill. 2016); *see also Rose v. Haney*, No. 16 CV 5088, 2017 WL 1833188, at *5 (N.D. Ill. May 8, 2017). Logan had no formal

responsibilities to report to the OIG—a separate and independent body that aims to root out corruption. *See Kristofek v. Vill. of Orland Hills*, 832 F.3d 785, 793 (7th Cir. 2016) ("[W]e must be especially careful in concluding that employees have spoken pursuant to their official duties when the speech concerns allegations of public corruption."). In making that report, at least, Logan thus spoke purely as a citizen, not as an employee within his official capacity.

Putting aside that Logan spoke as a citizen, Defendants nevertheless contend that Logan's claim must fail because it does not satisfy the second protected speech requirement, namely that he was not speaking on a matter of public concern. Defendants argue that his speech concerned only him individually and thus missed the mark. The Supreme Court has defined "public concern" to mean "legitimate news interest," or "a subject of general interest and of value and concern to the public at the time of publication." *Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 684 (7th Cir. 2014) (quoting *City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement[.]" *Connick v. Myers*, 461 U.S. 138, 147–48 (1983). "Speech that serves a private or personal interest, as opposed to a public one, does not satisfy the standards of First Amendment protections." *Houskins v. Sheahan*, 549 F.3d 480, 491–92 (7th Cir.

2008) (citation omitted). Here, Logan's Complaint neither alleges nor introduces evidence supporting a conclusion that his concerns about retaliation or discrimination serve something greater than his own personal interest. In an attempt to rectify such omissions from the Complaint, Logan asserts in his brief that the DOA has been in the news for issues related to discrimination. This is insufficient. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (stating that plaintiff may not amend complaint through arguments in brief in opposition to motion to dismiss). The "content, form and context" of Logan's complaints demonstrate that his purpose was to advance private interests. *See Connick*, 461 U.S. at 147-48. Logan has thus failed to state sufficient facts to support that his speech was a matter of public concern. Accordingly, the Court dismisses Count IV without prejudice.

### C. Count VI: *Monell* Claim

Defendants move to dismiss Count VI—Logan's *Monell* claim—arguing that Logan failed to state a claim for municipal liability. Specifically, Defendants argue: (1) the allegations are entirely conclusory; (2) Logan relies on a single underlying incident, which is insufficient to raise a *Monell* claim; and (3) the First Amendment does not apply.

In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978), the Supreme Court held that a

government agency may be held liable when its official policy or custom inflicts the plaintiff's injury. But "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cty. Com'rs of Bryan Cty., v. Brown*, 520 U.S. 397, 403 (1997). Rather, to "establish municipal liability, a plaintiff must show the existence of an official policy or other governmental custom that not only causes but is the moving force behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012) (internal quotation marks omitted).

Defendants first contend that Logan's *Monell* claim is entirely conclusory and fails to plead sufficiently factual allegations. The Court disagrees. Complaints should be construed liberally. *Riemer v. Illinois DOT*, 148 F.3d 800, 804 (7th Cir. 1998). The Seventh Circuit has found that allegations bordering on "boilerplate vagueness" may still be sufficient to allege a *Monell* claim. *See Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 480 (finding that the plaintiff's allegation that the municipality had a policy of inadequately training or supervising its officers was sufficient to overcome dismissal). Here, Logan pleads that Defendants' actions give rise to:

> a widespread permanent, well-settled practice and custom of endorsing retaliation and discrimination against employees who engage in First Amendment protected activity in association and speech, including, but not

limited to: disciplining, seeking discipline, granting unfavorable job duties to, denying promotions, denying pay premiums, and similarly-adverse employment actions against employees who engage in constitutionally-protected speech - and association-based activity. Such activity includes filing grievances, serving as union steward or business agent, and testifying in grievance and arbitration hearings against the CITY in behalf of the defense of other employees.

(Compl. ¶ 67.) These allegations plausibly suggest that the City maintained a practice and/or custom of retaliation and discrimination. Whether Logan can demonstrate that the City indeed maintained such a practice is a question better left for summary judgment.

Defendants' second argument also fails. Defendants rely on *Lanton v. City of Chicago*, No. 16 C 2351, 2017 WL 569155, at *5 (N.D. Ill. Feb. 13, 2017), to argue that *Monell* claims based solely on a single underlying incident are insufficient. However, Logan's *Monell* claim, as provided above, demonstrates more than just a "random, isolated incident related to [p]laintiff[.]" *Id.* Rather, Logan pleads specific categories of allegedly protected conduct that has resulted in the retaliation and discrimination against other employees. That is sufficient to overcome Defendants' motion.

Defendants finally argue, for the same reasons raised against Count IV, that the First Amendment does not apply. The Court agrees. As explained in the preceding section, Logan has failed to

plead sufficient facts demonstrating that his speech is a matter of public concern warranting First Amendment protection. Therefore, the Court dismisses the First Amendment claim in Count VI without prejudice. The Due Process and Equal Protection claims may nonetheless proceed.

### D. Count VII: Illinois Whistleblower Act Claim

Defendants also move to dismiss Count VII—Logan's Illinois Whistleblower Act ("IWA") claim. The IWA prohibits employers from "retaliat[ing] against an employee who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of State or Federal law, rule or regulation." 740 ILCS 174/15. Logan may establish an IWA claim "by showing that he engaged in protected whistleblowing activity, suffered adverse employment action, and *his employer* retaliated against him as a result." *Bello v. Vill. of Skokie*, 151 F. Supp. 3d 849, 865 (N.D. Ill. 2015) (emphasis added).

Defendants first argue that Logan fails to allege that any of the individual Defendants were his employer. Defendants rely on *Cunliffe v. Wright*, 51 F. Supp. 3d 721, 740 (N.D. Ill. 2014), which held that "there is no individual liability under the IWA, which only creates a cause of action against an employer." *See Hernandez v. Cook Cty. Sheriff's Office*, No. 13 C 7163, 2014 WL 1339686, at

*3 (N.D. Ill. Apr. 3, 2014); *Martorana v. Vill. of Elmwood Park*, No. 12 C 6051, 2013 WL 1686869, at *4 (N.D. Ill. Apr. 18, 2013). The Court recognizes, however, that other courts in this District have found that claims against *agents* of an employer also satisfy the IWA. For example, in *Van Pelt v. Bona-Dent, Inc.*, No. 17 C 1128, 2018 WL 2238788, at *6 (N.D. Ill. May 16, 2018), the court concluded that "[t]he unambiguous and plain language of the IWA includes [the individual defendant] because he is alleged to have been acting on behalf of the [ ] corporation and within the scope of his authority when he fired" the plaintiff. Additionally, in *Bello v. Village of Skokie*, No 14 C 1718, 2014 WL 4344391, at *9 (N.D. Ill. Sept. 2, 2014), the court found that the IWA "makes clear that individuals acting on behalf of an entity that one might colloquially understand to be a person's 'employer' may likewise be considered 'employers' potentially liable for violating the statute." This Court adopts the latter approach. The definition of "employer" under IWA includes "an individual," as well as "any person acting within the scope of his or her authority express or implied on those entities in dealing with its employees." 740 ILCS 174/5. The individual Defendants here acted on behalf of the City. Interpreting the statute as written, these Defendants thus fall within the IWA's ambit. Therefore, they are not entitled to dismissal on this ground.

Defendants next argue that Logan's complaints to the OIG and HR were internal reports to his employer and thus are not protected by the IWA. The Court agrees in part. Generally, there is "no cause of action where an employee reveals information only to his or her *employer*." *Huang v. Fluidmesh Networks, LLC*, No. 16 CV 9566, 2017 WL 3034672, at *3 (N.D. Ill. July 18, 2017) (citation omitted); *Cunliffe*, 51 F. Supp. 3d at 740. Here, Logan disclosed information to HR and the OIG, both City entities and thus Logan's employer. But the inquiry does not end there. The IWA prohibits employers from retaliating "against an employee for disclosing information to a *government or law enforcement agency*." 740 ILCS 174/15(b) (emphasis added). Logan's report to OIG, specifically, thus poses a more difficult question—what if one's employer also happens to be a law enforcement agency?

Several courts in this District have considered this issue. The Defendants rely on *Cunliffe*, 51 F. Supp. 3d at 740 (citation omitted), where the court found that the plaintiff's report to the Inspector General (IG) was not a protected activity because the IG was the plaintiff's employer. Nevertheless, though Logan never recites as much, other courts in this District have found that a report to the OIG does indeed constitute a protected activity even when the plaintiff's employer is also a law enforcement agency. *See Mislap v. City of Chicago*, No. 16 CV 4202, 2018 WL 488270, at *8-9 (N.D. Ill. Jan. 19, 2018) (holding that the plaintiff "has

alleged that he reported what he perceived to be illegal conduct to the OIG, and that is enough to state a claim under 15(b) of the IWA" and "[t]hat the agency also happens to be an agency of his employer does not exempt him from the statute"); *Brame v. City of North Chicago*, 955 N.E. 2d 1269, 1271 (Ill. App. Ct. 2011) (holding that the plaintiff's report is protected even when the report is made to "his own employer, who also happens to be the head of a 'government or law enforcement agency'").

This Court agrees with the latter cases. The IWA "requires an employee only to report to a government or law-enforcement agency, and no exceptions apply if a government or law-enforcement agency is also the employer." *Brame*, 955 N.E. 2d at 1272-73. "This plain reading also furthers the purpose of the statute, especially here, where the plaintiff alleges that he reported alleged wrongdoing to an agency like the City's OIG, which is specifically charged with promoting integrity and rooting out corruption and waste within the affairs of the City government." *Milsap*, 2018 WL 488270, at *9. Moreover, the *Cunliffe* court, unlike the latter courts, did not consider specifically the question of when one's employer also serves as a law enforcement agent. *Id*. at 8. Instead, the *Cunliffe* court relied on cases where the employer was not even a government entity. *Id.* For the foregoing reasons, the Court finds that Logan's report to the OIG is protected activity under the IWA, even though the OIG constitutes Logan's employer.

Finally, Defendants argue that Logan cannot satisfy the causation requirement under the IWA. Defendants contend that Logan fails to show that the individual Defendants had knowledge of Logan's internal complaints when they decided to contact HR and to request that he be removed from the Promotion List. This argument fails. Logan is not required to prove causation at this point, but to allege it plausibly. If Logan is unable to show that Defendants had knowledge of his internal complaints, then perhaps he will lose on summary judgment. "But the Court is not entitled to assume that other evidence of causation is lacking simply because it is not detailed in [plaintiff]'s complaint." *Bello*, 2014 WL 4344391, at *5. For present purposes, Logan has sufficiently alleged a causal connection between his protected conduct and Defendants' adverse actions. Accordingly, Logan's IWA claim in Count VII withstands dismissal.

### E.  Count VIII: Intentional Interference with Economic Advantage Claim

Defendants also move to dismiss Count VIII—Logan's Intentional Interference with Economic Advantage ("IIEA") claim. To state a claim under Illinois law for IIEA, "a plaintiff must allege (1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional unjustified  interference by the defendant that induced or caused a breach or termination of the

expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Foster v. Principal Life Ins. Co.*, 806 F.3d 967, 971 (7th Cir. 2015) (internal quotation marks and citation omitted). For an IIEA claim, the alleged misconduct "must be directed at third-party business prospects." *F:A J Kikson v. Underwriters Labs., Inc.*, 492 F.3d 794, 800 (7th Cir. 2007).

Defendants argue that Logan's employment action seeks the promotion benefits denied from his employer, the City, and not from a "third-party business prospect." *Id.* The Court agrees. The law is clear on this point. Logan attempts to argue that because the individual Defendants acted outside the scope of their employment, they became third-parties under the IIEA. But such an argument would render the requirement for "third-party business prospects" pointless. Any employer faced with an IIEA claim could thus constitute a "third-party" so long as the plaintiff alleges that the employer acted outside the scope of his or her employment in interfering with potential business prospects. Logan's argument thus fails. Accordingly, Logan fails to state a claim for IIEA and Count VIII is dismissed with prejudice.

### F.  Count IX: Breach of Contract Claim

Defendants move to dismiss Count IX — Logan's breach of contract claim—arguing that Logan (1) lacks standing and (2) fails to allege compliance with the applicable 2011 Collective Bargaining Agreement ("CBA").

The Court finds Defendants' first argument on standing dispositive and thus need not venture into the second. The Illinois Public Labor Relations Act ("IPLRA") governs the CBA between the City and Logan's union, SEIU Local 73. 5 ILCS 315/2. The Supreme Court of Illinois has considered the issue of employee standing under IPLRA and found that "individual employees represented by a union cannot bring a suit to overturn the outcome of a grievance procedure[.]" *Stahulak v. City of Chicago*, 703 N.E. 2d 44, 47 (Ill. 1998) (collecting cases). Individual union members are "entitled to judicial review of a grievance or arbitration, only if the individual proves that the union's conduct in processing the grievance was arbitrary, discriminatory, or in bad faith." *Id.*

Logan makes no allegation that his union breached its duty of fair representation warranting standing. Instead, Logan argues that *Stahulak* is inapplicable and that the CBA offers additional grounds for standing. Logan points to Section 8.4 of the CBA, which reads: "Grievances by employees alleging violation of [Article 8 Non-Discrimination] shall be resolved through Step III of the Grievance Procedure of This Agreement, but shall not be subject to arbitration unless mutually agreed by the parties." (Exhibit B to Compl. 17, Dkt. No. 22-2.) Logan argues that this provision "carves out discrimination violations from the arbitration clause, making it impossible for an employee to have his rights under this section

vindicated short of a lawsuit by either the employee or the union on his behalf." (Pl.'s Resp. 14, Dkt. No. 32.)

Logan fails to address, however, that Section 8.4 states that the violation "shall be resolved through Step III of the Grievance Procedure." In Step III, the CBA provides that if a grievance is not settled, it must be appealed to the Department Head. (Exhibit B to Compl. 13.) The Department Head shall "have the requisite authority to attempt to resolve grievances during the Step III meeting[,]" and "[i]f an arbitrable dispute is not settled at the third step, either the Union or the Employer may notify the other in writing . . . that it requests final and binding arbitration of its grievance." (Exhibit B to Compl. 13.) Logan's argument thus undeniably fails. Section 8.4 does not "mak[e] it impossible for an employee to have his rights under this section vindicated short of a lawsuit" (Pl.'s Resp. 14); rather, it obviously provides the alternative path to pursue such claims. Perhaps Logan was mistaken. If not, his attempt to misconstrue the CBA is regrettable.

For the foregoing reasons, Logan lacks standing and thus fails to state a claim for breach of contract. Accordingly, Count IX is dismissed with prejudice.

### G.  Counts VIII & IX: Punitive Damages and Attorney's Fees

As discussed in the preceding two sections, Counts VIII and IX are dismissed with prejudice—for failure to state an IIEA claim

and a breach of contract claim, respectively. That dismissal eliminates Counts VII and IX. But for sake of completeness, the Court considers Defendants' request to strike punitive damages and attorney's fees from Counts VIII and IX.

Defendants first contend that the City is immune from punitive damages under 42 U.S.C. § 1983. Defendants are correct. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (holding that "considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials"). Defendants are also correct in arguing that Logan cannot seek attorney's fees for the state claims represented by these counts. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010) ("Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."). Neither statute nor contract provide for attorney's fees in Counts VIII and IX. Logan concedes both points and raises no objections. Accordingly, the Court strikes both punitive damages and attorney's fees from the relief sought in Counts VIII and IX.

### III.  <u>CONCLUSION</u>

For the reasons stated herein, the Court grants in part Defendants' Motion to Dismiss. (Dkt. No. 29.)  Count IV and the First Amendment claim in Count VI are dismissed without prejudice and Counts VIII and IX are dismissed with prejudice. The individual

Defendants are also stricken from Count III. The case therefore proceeds on Counts I, II, III (solely against the City), VI (solely on Due Process and Equal Protection grounds), VII, and X.

**IT IS SO ORDERED.**


_____
Harry D. Leinenweber, Judge
United States District Court

Dated:  10/24/2018